IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Melody M. Price** | ) | |
| | ) | **Case No. 07-01905-TOM** |
| | ) | |
| **Debtor.** | ) | |

| | | |
|---|---|---|
| **Melody M. Price** | ) | |
| | ) | |
| **Plaintiff** | ) | **Adversary Proceeding No.** |
| | ) | **08-00189-TOM** |
| v. | ) | |
| | ) | |
| **Washington Mutual Bank, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

This matter is before the Court on the following: Defendant JPMorgan Chase Bank, N.A.'s (hereinafter, "Chase") Motion to Dismiss Second Amended Complaint (adv. proc. doc. no. 88)[1] and Memorandum in Support of its Motion to Dismiss Second Amended Complaint[2] (adv. proc. doc. no. 89)(hereinafter, "Chase's Motion" cited as "Chase Mot.") filed pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure; Melody Price's (hereinafter, "Plaintiff") Response to Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss (adv. proc. doc. no. 92)(hereinafter, "Plaintiff's Response" cited as "Pls. Resp."); and Chase's Reply Memorandum in Support of its Motion to Dismiss Second Amended Complaint (adv. proc. doc.

---

[1] References to pleadings in the main bankruptcy case are referred to as "doc. no.," while references to pleadings in the adversary proceeding are referred to as "adv. proc. doc. no."

[2] Plaintiff's Second Amended Complaint (adv. proc. doc. no. 64) shall hereinafter be cited as "Sec. Am. Comp."

no. 96)(hereinafter, "Chase's Reply" cited as "Chase Reply"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). The Court has considered the pleadings and the law and finds and concludes as follows.[3]

## A. FINDINGS OF FACT[4]

On April 27, 2007, the Plaintiff filed a voluntary Chapter 13 bankruptcy petition (doc. no. 1) in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division. WaMu was listed as a creditor on the bankruptcy schedules of this petition. (doc. no. 1, at 13) On or about May 17, 2007, WaMu, "as Servicer for Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-6," filed a proof of claim which listed "a secured debt owed by Ms. Price in the amount of $91,451.29 with an arrearage claim of $1,187.56." (*See* Proof of Claim 4-1; adv. proc. doc. no. 50, Ex. A; Pls. Resp. 1-2) The following language was found at the end of this proof of claim:

> *Please be advised that additional fees and costs have been
> incurred for the post-petition preparation and filing of this Proof of
> Claim. These fees and costs have not been included in the Proof of
> Claim. If the debtor(s) want these fees and costs included in the
> Proof of Claim so that the subject loan is current upon completion
> of the Bankruptcy Plan, please contact Moss Codilis, L.L.P. at
> (303) 799-6966.

(*See* adv. proc. doc. no. 50, Ex. A.; Pls. Resp. 2) The Plaintiff filed an objection to WaMu's

---

[3]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4]Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

proof of claim (doc. no. 33) on July 3, 2007, asserting that the foregoing language indicated that WaMu was failing to properly disclose these post-petition, pre-confirmation fees, and that WaMu was violating the automatic stay. On August 6, 2007, WaMu filed a response (doc. no. 44) to Plaintiff's objection to claim, which provided that "all amounts listed on the Proof of Claim are proper and allowable under the provisions of the United States Bankruptcy Code." (doc. no. 44, at 1) On August 22, 2007, WaMu amended its proof of claim, omitting the above-quoted language. (Proof of Claim 4-2; Sec. Am. Comp. 6)

A Second Amended Proof of Claim was filed on December 28, 2007, which reflected a secured debt in the amount of $91,493.76 with an arrearage claim of $2,079.48 owed by Ms. Price. (Proof of Claim 4-3; Pls. Resp. 3) Subsequently, a Third Amended Proof of Claim was filed by WaMu on February 5, 2008, which noted that Ms. Price had a secured debt in the amount of $92,256.11 that included an arrearage claim of $5,388.03. (Proof of Claim 4-4; adv. proc. doc. no. 2, Ex. D; Pls. Resp. 4)

On April 28, 2008, WaMu, pursuant to the Plaintiff's Request for Production (doc. no. 80), produced a "transaction history." (*See* Sec. Am. Comp. 6; adv. proc. doc. no. 2, Ex. E) This "transaction history" listed bankruptcy fees in the amount of $2,743.75 that had been "charged" to the Plaintiff's account. (*Id.*) Additionally, a $50.00 corporate assignment fee had been "charged" to the Plaintiff's account, bringing the total amount of "bankruptcy fees" "charged" to the Plaintiff's account to $2,793.75. (*Id.*) At that time, only $1,350.00 in attorneys fees and costs - which were related to Motions for Relief - had been approved by the Court. (*See* Sec. Am. Comp. 6) On July 29, 2008, the Plaintiff filed this adversary proceeding (adv. proc. doc. no. 1) against WaMu. The initial complaint in this adversary proceeding asserted that WaMu's

3

charging of "bankruptcy fees" beyond the $1,350.00 approved by the Court was improper, giving rise to various causes of action. (*See* adv. proc. doc. no. 1)

On September 25, 2008, WaMu was placed into a receivership of the Federal Deposit Insurance Corporation ("FDIC"). (*See* Chase Reply 3-4) On the same day, the FDIC and Chase entered into the "Purchase and Assumption Agreement" (*See* Chase Mot., Ex. A)(hereinafter, the "Agreement"), whereby the FDIC sold the "assets and certain liabilities of WaMu to Chase...." (*Id.* at 4) Pursuant to the terms of the Agreement, the liabilities not assumed by Chase were retained by the FDIC. (*See* Chase Mot., Ex. A) Section 3.1 of the Agreement provides:

> **Assets Purchased by Assuming Bank.** Subject to Sections 3.5, 3.6 and 4.8, the Assuming Bank hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing. Assets are purchased hereunder by the Assuming Bank subject to all liabilities for indebtedness collateralized by Liens affecting such Assets to the extent provided in Section 2.1. The subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated being purchased by the Assuming Bank includes, but is not limited to, the entities listed on Schedule 3.1a. Notwithstanding Section 4.8, the Assuming Bank specifically purchases all mortgage servicing rights and obligations of the Failed Bank.

(*See* Chase Mot., Ex. a.1, at 9) Section 2.1 of the Agreement provides:

> **Liabilities Assumed by Assuming Bank.** Subject to Section 2.5 and 4.8, the Assuming Bank expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform, and discharge, all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank

4

> as of Bank Closing, including the Assumed Deposits and all liabilities associated with any and all employee benefit plans, except as listed on the attached Schedule 2.1, and as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed"). Notwithstanding Section 4.8, the Assuming Bank specifically assumed all mortgage servicing rights and obligations of the failed bank.

(*See* Chase Mot., Ex. a.1, at 8) Section 2.5 of the Agreement provides:

> **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to Failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

(*See* Chase Mot., Ex. a.1, at 9) On November 19, 2008, this Court granted WaMu's Motion to Substitute Party for Real Party in Interest (adv. proc. doc. no. 30), which requested that the FDIC be substituted for WaMu as the real party in interest in this adversary proceeding. (*See* adv. proc. doc. no. 39)

Subsequent to the execution of this Agreement by Chase and the FDIC, the Plaintiff learned of the FDIC's transfer of WaMu's assets and certain liabilities to Chase by reading the public notice outlining this transaction on the FDIC's website. (*See* adv. proc. doc. no. 50, at 2) On March 13, 2009, believing that the servicing rights to her loan were among the assets transferred to Chase as part of this transaction, the Plaintiff filed a Motion to Amend and/or Alter

5

her Complaint (adv. proc. doc. no. 50) to add Chase as a party to the ongoing adversary proceeding against the FDIC. The Plaintiff's proposed Second Amended Complaint asserts that both Chase and WaMu are liable for WaMu's alleged improper assessment of fees to Plaintiff's mortgage account, which occurred prior to September 25, 2008. (*See* adv. proc. doc. no. 50, at 5-10) Additionally, Plaintiff alleges that "Washington Mutual and/or JPMorgan [Chase] is attempting to collect [, scheming to collect] ... or will collect [the disputed bankruptcy fees] during the pendency of the case, once the Debtor has received her discharge, or once she is dismissed from the case, whichever occurs first." (*Id.* at 7-8) Further, the Plaintiff alleges that WaMu and/or JPMorgan Chase "may" have assessed other "unauthorized and unapproved post-petition fees and charges" "against her account" during the pendency of her bankruptcy case. (*Id.* at 7) Plaintiff alleges that this conduct amounts to violations of the automatic stay, contempt, unjust enrichment/disgorgement and violations of Bankruptcy Rules 2016 and 3001. (*Id.* at 8-10) Plaintiff also objects to WaMu's proof of claim and avers that this adversary proceeding can be maintained as a class action. (*Id.* at 10-14).

On June 30, 2009, the Court entered an Order granting the Plaintiff's Motion to Amend and/or Alter her Complaint. (*See* adv. proc. doc. no. 63) Chase then filed this Motion to Dismiss.

### B. CONCLUSIONS OF LAW

**Standard of Review**

Chase filed its Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. These rules are applicable in this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure. A motion to dismiss pursuant to Rule 12(b)(6) "tests

6

the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Citigroup Global Mkts. Realty Group v. City of Montgomery*, No. 2:09-CV-784, 2009 WL 4021803, at *1 (M.D. Ala. Nov. 19, 2009)(quoting Fed.R.Civ.P. 8(a)(2)). When ruling on a motion to dismiss, courts "'must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.'" *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005)(quoting *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007)("We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that the 'pleadings are construed broadly,' and that the allegations in the complaint are viewed in the light most favorable to the plaintiff")(citing *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). However, in order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashford v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In the event the complaint proffers "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim, there is a "plausible" ground for recovery and thus a Rule 12(b)(6) motion to dismiss should be denied. *Twombly*, 550 U.S. at 556.

A Rule 12(b)(1) motion to dismiss seeks dismissal of a civil action for lack of subject

7

matter jurisdiction. Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, the court is required to dismiss a civil action whenever it lacks subject matter jurisdiction. In the Eleventh Circuit, "attacks on subject matter jurisdiction can be facial or factual." *Ibarra v. Swacina,* No. 09-22354, 2009 WL 4506544, at *4 (S.D. Fla. December 3, 2009)(citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalky v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008). In both cases, "the burden to establish the existence of federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n. 2 (11th Cir. 2005); *see also Ishler v. Internal Revenue*, 237 Fed. Appx. 394, 395 (11th Cir. 2007)("Ultimately, the plaintiff bears the burden of establishing subject matter jurisdiction").

**Chase's Motion to Dismiss**

Chase argues that Plaintiff's claims against it are due to be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Chase's arguments pursuant to 12(b)(6) address Plaintiff's contention that Chase is liable for the violations allegedly committed by WaMu prior to the September 25, 2008 Agreement between Chase and the FDIC. Chase asserts that the language of Sections 2.1 and 2.5 of the Agreement clearly absolves Chase from any liability associated with these alleged violations. Chase's arguments pursuant to 12(b)(1) address Plaintiff's contentions that Chase has itself "continually assessed . . . [undisclosed,

8

unauthorized] fees" to Plaintiff's mortgage account and is "attempting to collect," "scheming to collect" or "will collect" these fees in addition to those fees which were allegedly wrongfully assessed by WaMu to Plaintiff's mortgage account. (*See* Pls. Am. Comp. 7-8) It also addresses Plaintiff's contention that Chase "may" have assessed other charges against Plaintiff's account. (*Id.* at 7) Specifically, Chase argues that these claims are due to be dismissed pursuant to 12(b)(1) because they are inchoate in nature and thus fail to satisfy Article III standing and ripeness requirements.[5] (*See* Chase Mot. 8-9; Chase Reply 2-3)

Article III of the United States Constitution limits federal subject matter jurisdiction to actual "cases or controversies," which means that a plaintiff must have standing to bring the suit and a case that is ripe for adjudication. To determine whether a plaintiff has standing to bring suit in federal court, the following three-step test is applied:

> First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). For a case to be ripe for adjudication, it must be "sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir.

---

[5] Standing and ripeness are issues of subject matter jurisdiction. *See Dermer v. Miami-Dade County*, No. 08-15061, 2010 WL 890137 (11th Cir. Mar. 15, 2010).

9

1995)(citing *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)(quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985)).

Chase also argues that Plaintiff has failed to provide any factual support for these claims in her Second Amended Complaint and thus has failed to satisfy the pleading requirements as set forth in *Ashford*, *supra.* and *Twombly*, *supra.* (*See* Chase Mot. 2-5; Chase Reply 1-3**)**

Plaintiff has failed to allege any facts in her Second Amended Complaint which support her assertions that Chase has wrongfully assessed fees or "may" have assessed other charges to her mortgage account. The same is true with respect to Plaintiff's contentions that Chase is "attempting to collect," "scheming to collect" or "will collect" fees which were allegedly wrongfully assessed to Plaintiff's mortgage account. These bare assertions are insufficient under *Ashford* and *Twombly*, which provide that "'naked assertion[s]' devoid of 'further factual enhancement'" are not enough to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Furthermore, each of these claims is hypothetical and conjectural in nature. Without any factual support, Plaintiff's contentions that Chase has improperly assessed fees to Plaintiff's mortgage account and "may" have assessed other charges to Plaintiff's mortgage account amount to mere conjecture. As to Plaintiff's claims that Chase is "attempting to collect,""scheming to collect" or "will collect" fees which were allegedly wrongfully assessed to Plaintiff's mortgage account, the very language of these claims suggests their hypothetical, conjectural nature. Thus,

10

Plaintiff does not have standing to assert these claims because they are hypothetical and conjectural.

Finally, counsel for Plaintiff in this case assert that Chase had a duty under § 506(b) of the Bankruptcy Code to disclose the fees which Chase allegedly assessed. However, Plaintiff's counsel represent plaintiffs in another similar adversary proceeding in which they have conceded that the disclosure requirements of § 506(b) of the Bankruptcy Code are only applicable to fees which are assessed post-petition and pre-confirmation.[6] In this case, Chase was not servicing Plaintiff's loan between the filing date of the case and confirmation of the Plaintiff's bankruptcy plan (post-petition, pre-confirmation), so Plaintiff does not have nor can she assert any claim against Chase for the alleged improper assessment of fees under § 506(b) of the Bankruptcy Code.

Citing 12(b)(6), Chase goes through many complicated arguments as to whether the Agreement excludes any potential legal liability that might be asserted by Plaintiff against Chase. This Court cannot and need not determine that the language cited by Chase clearly and specifically excludes any and all legal liability.[7] However, to the extent that Plaintiff has a claim

---

[6]According to the Eleventh Circuit Court of Appeals' decision in *Telfair v. First Union Mortgage, Corp.*, 216 F.3d 1333, 1338-39 (11th Cir. 2000), § 506(b) of the Bankruptcy Code requires the disclosure of certain post-petition, pre-confirmation fees. Section 506(b) does not require disclosure of post-confirmation fees. Thus, even if Chase did not disclose fees it allegedly assessed to Plaintiff's mortgage account, § 506(b) of the Bankruptcy Code would not be applicable due to the post-confirmation nature of these fees.

[7]The Court is aware of Judge Ishii's February 24, 2010 Order on Defendant's Motion to Dismiss in the case of *Johnson v. Wash. Mut., et al.*, Case No. 1:09-CV-929, 2010 WL 682456 *7-8 (E.D. Cal. February 24, 2010)(dismissal of claims against Chase is inappropriate due to the fact that the language of Section 2.1 of the Agreement may have shifted WaMu's pre-September 25, 2008 servicing liabilities to Chase). However, the Court believes *Johnson* is distinguishable

11

for post-petition, pre-confirmation charges that may have been charged or posted to her mortgage, there are no facts alleged, even when viewed in a light favorable to the Plaintiff, that can establish Chase's liability under the Bankruptcy Code for these claims when Chase's servicing responsibilities in relation to Plaintiff did not commence until September 25, 2008. These servicing responsibilities arose over a year after both the filing of the case and the entry of the confirmation order - the "deadline" for these claims to have arisen.[8] Plaintiff has failed to allege any facts upon which she is entitled to relief from Chase.

## C. CONCLUSION

Based on the foregoing, this Court finds that Chase's Motion to Dismiss is due to be granted.

Therefore, it is hereby **ORDERED, ADJUDGED and DECREED** that the Motion to Dismiss is **GRANTED**, and it is further

**ORDERED, ADJUDGED and DECREED** that the adversary proceeding is reset for a status conference on May 10, 2010 at 10:30 a.m.

Dated this the 8th day of April, 2010.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

---

from this case because it appears the *Johnson* case was filed after Chase had already begun servicing Plaintiff's mortgage, so it was the servicer during the applicable time of post-petition, pre-confirmation.

[8] *See Telfair*, *supra.*

12

TOM: rdt

xc: Danielle J. Szukala, attorney for JPMorgan Chase Bank N.A.
Janine L. Smith, attorney for Federal Deposit Insurance Corp.
Lange Clark, attorney for Melody M. Price
Robert C. Keller, attorney for Melody M. Price
Shaun Ramey, attorney for JPMorgan Chase Bank, N.A.

13